Dissenting opinion of
Judge Burnet :
I concur most cheerfully in the decision made by the court in this case, but my conclusion has been derived from different premises.
I am satisfied that the payment of the money by Starling, under whom the defendant holds, and the quitclaim deed from Lang-don, the mortgagee, ought to be treated as a transfer of Langdon’s interest in the mortgage. The day of payment had passed, and the mortgagee had a right to the possession of the mortgaged premises. The defendant may be considered as in possession under the mortgage, and in strictness of law, he has a perfect legal title, which can not be disturbed, but by a bill to redeem, which is a distinct subsequent procedure, in which relief may be granted, or denied, according to the circumstances and equity of the case. *189 TU proposition stated in argument, that a judgment on set. fa. meiges the mortgage, may be admitted in cases to which it properly applies, and where there are’no circumstances to counteract it. The law abhors multiplicity of action, and where one remedy has been resorted to with success, it usually restrains resort to another to accomplish the same purpose. In Reedy v. Burgent, 1 Ohio, 157, cited by plaintiff, the remedies were considered as concurrent, not as auxiliary. The object was to obtain two distinct judgments at law, for the same debt, which was supposed to be inadmissible under the statute, but it can not be inferred from that case, that the judgment so merged the mortgage as to prevent an assignment, or to prohibit an ejectment to recover the possession, or a bill to foreclose the equity of redemption. A proceeding by a sei. fa. is like an action of debt on the bond which accompanies a mortgage it may bar a second action to recover a judgment for •the same debt, without restraining an assignment, or affecting the auxiliary remedies. In the case of Jackson v. Delaney, 13 Johns. 538, before the court of errors, judgment had *been obtained on the bond accompanying the mortgage, and revived by sei. fa., and yet it was held that the heir of the mortgagee was a trustee for the children to whom the beneficial interest had been devised,. and that they might use his name to recover the money or to foreclose the mortgage, or to gain the possession; and in the same case, 11 Johns. 411, before the Supreme Coui't, it was held, that the lessor of the plaintiff, who had purchased and taken possession by virtue of a sheriff’s deed, on a sale under a judgment, for the money secured by the mortgage, could not be treated as a stranger by the mortgagor, and that although the proceedings to recover might be insufficient to support the sale by the sheriff to the lessor, yet as a claimant under the representatives of the mortgagee, he ought not to be disturbed in his possession. A judgment, therefore, for the mortgage debt, does not produce such a merger of the mortgage as to prevent subsequent proceedings, or to restrain a purchaser, circumstanced as the present defendant is, from a recourse-to the rights and powers of the mortgagee for bis protection. It is not necessary to controvert the position taken by the plaintiffs, that the mortgaged estate can not be separated from the debt, and that the payment of the debt extinguishes the mox'tgage, because the facts of the case do not render that doctx’ine applicable. It is-true that when Starling paid tho money, he supposed he was dis *190 charging the debt, and securing to himself the legal title, but on the supposition that the sale was void, his calculations were erroneous. The money was paid by mistake; he acquired no title; the consideration failed, and he had a right to retain the money. The debt, then, was not extinguished, and Starling had a right to appropriate the amount paid by him to the purchase of an interest in the mortgage, and to protect himself under it. The quitclaim deed,, as it has been called, is carelessly and inartificially drawn, but the circumstances of the case, when taken in connection, show the intention of the parties, and' what ought to be its legal operation. No person can doubt for a moment, that it was Starling’s intention to protect himself against the consequences of a supposed illegality iu the sheriff’s sale. That could not be done by any arrangement with Langdon, other than a purchase of his interest in the mortgage. All contracts are -^construed with reference to the intention of the parties. The release of Langdon can not operate to any valuable purpose, if it be considered as intended to convey an interest in the land, distinct from the debt, for the security of which the mortgage was given. But we know that it was intended to accomplish some valuable .object, and the purpose for which it was designed ought to be lost, if by any construction in the power of the court, such a consequence may be prevented. One of the many maxims given by Lord Coke, is lex semper intendit quod convenit rationi. It may then be asked, what does reason and common sense dictate in a case like this? Is it that Langdon’s deed shall piass for nothing, or that it shall be taken in connection with the payment of the money, as the consideration of the transfer of some valuable right vested in Langdon as a mortgagee ? I should say the latter. And I confess that I see no other way in which that deed can operate, but as a conve3mnce of Langdon’s interest in the mortgage, in consideration of his being permitted to retain the money paid by Starling, which, otherwise, he would be liable to refund.
This subject presents many points, some of which are both interesting and difficult. It is not my intention, however, to enter ■on a formal discussion of any of them, but merely to state the grounds on which my assent- is given to the decision of the court, which is, that the payment of the money by Starling, whatever-may have been the original object of it, is not now to be considered as an extinguishment of the mortgage debt, but the consid *191 «ration of the conveyance of such an interest in the mortgage as will protect his possession in the present suit.
In relation to the appraisement, two questions are presented:
1. Did the law relating to this mortgage require an appraisement of the land before the sale?
2. If it did, does the omission of the appraisementvitiate the sale?
First. The mortgage to Langdon was executed in 1805. The judgment on it was rendered in 1809. The act under which the proceedings were had, was passed in 1805, and provides “that the mortgaged premises shall be taken in execution and disposed of in the same manner, and under the same regulations, that lands are, or may be by law ^disposed of for the satisfaction of judgments.” I take it to be the true construction of this act that whenever the sheriff receives an execution on a judgment, rendered on a mortgage, he must proceed in all respects, as is directed by the act regulating the sale of land on ordinary judgments, that may happen to be in force at the time when the execution is put into his hands.
The execution on this mortgage came to the hands of the sheriff in 1809. The law of 1808, regulating judgments and executions, was then in force, the first section of which provides, that if execution be levied on land, thé officer shall call an inquest of five reputable freeholders, and the inquest shall, on oath or affirmation, return to said officer, under their hands and seals, an estimate of the real value of said estate, on actual view of the premises. This being the act by which the sheriff was to be governed, the first question admits of no doubt; it was the sheriff’s duty to cause the land to be appraised.
Second. On the second question I am so unfortunate as to differ from the majority of the court. It is their opinion that that part of the law, which relates to the appraisement, is directory to the sheriff, and that an omission to attend to it will not be fatal to the title of the purchaser, unless the exception be made before the execution of the sheriff’s deed.
The impression made on my mind, by the most careful attention that I have been able to give the' subject, is, that the appraisement is a condition precedent, without which the sale is absolutely void. The statute, after requiring the sheriff to cause the estate to be appraised, as above, proceeds, “ and the said officer, receiving such return shall forthwith deposit a copy thereof with the *192 clerk of the court where such writ issued, and immediately advertise and sell such real estate, agreeably to the provisions of the ninth section of the above-recited act, provided no tract of land that has improvements thereon, shall he sold for less than two-thirds, nor any tract of land without improvements thereon for-less than one-half of the returned value by the inquest. The ninth section referred to relates to the time and manner of advertising. It is here made the duty of the officer to return a copy of the appraisement before he is permitted to *advertise; and his-power to sell is subject to the proviso, or condition, that the sale be made for not less than a certain amount of the appraised value. The prohibition to sell for less than that amount is as positive as language can make it, and must qualify and control the direction previously given.
If the act had given an unqualified power to sell, and had then-pointed out the mode of proceeding, including the appraisement, it might have .been considered as directory to the officer. But admitting that it was the design of the act to make the appraisement a condition precedent, and not a direction merely, it would be difficult to select terms better adapted to the purpose, or to give them a better collocation.
I do not discover anything in section 21 of the act of 1810 which authorizes the court to amerce the sheriff, at the instance of either party, for proceeding to sell without appraisement.
It provides, among other things, that if the sheriff shall refuse >.o sell, or shall neglect to call an inquest, or shall refuse to pay the plaintiff all money made for his use, or shall refuse to pay to-the defendant any surplus that may remain, after satisfying the execution, he shall be amerced, etc., for the use of said plaintiff or defendant, as the case may be. The three first omissions are injurious to the plaintiff alone, and therefore entitle him to move against the sheriff. The first is injurious, by delaying the collection of the money, which can not be effected without a sale. The-second is injurious, by delaying the sale, for without an appraisement the sale can not legally be made ; and the third is injurious,, being an illegal detention of the money. The fourth is an injury to the defendant, and for that, and that only, he may move against, the sheriff. The provisions of this section are separate and distinct, neither of them relating to a sale without appraisement.
In considering this question, it should be borne in mind that at- *193 common law, lands can not be sold on execution. The authority of the officer to sell is derived altogether from the statute, and it will not be pretended that the legislature had not the same right to prescribe the terms and conditions of the sale which they had to authorize the sale itself.
*It was the policy of the English law to protect real estate from such sales, and when our legislature saw proper to change that policy, they did it under limitations and restrictions. The case stands thus : The language of the common law is, lands shall not be sold on execution. The, language of our statute is, they may be sold; provided they are first appraised, and then sold for not less than a certain proportion of the appraisement. The statute does not subject them to sale, nor give the officer a power to sell, till they are appraised; of course, before the appraisement, they remain as they were at common law, and can not be sold.
Ohio is essentially and necessarily an agricultural state. It has, therefore, been her policy to guard against the ruinous consequences of sacrificing real property, by forced sales ; and without such a guard, the cultivators of the soil, who form a large majority of our population, could not have been easily induced to change the common law in this particular.
It may, perhaps, be said that the construction given by the majority of the court puts it in the power of every defendant to avail himself of this guard. But how often does it happen, as was the fact in the ease now under consideration, that judgments are obtained against non-residents and infants, who have no notice; and that executions issue against residents, when absent from the state, who have no knowledge of the proceedings till it is too late to object.
It will be recollected that by the law of 1805 the sheriff was not directed to summon appraisers, unless the defendant requested it. The consequence was, that persons absent from the state, or unacquainted with legal proceedings, lost the benefit of the provision, to remedy which, the inquest was directed in all eases, and it is worthy of inquiry, whether the construction now given does not subject the present law to the same difficulties and objections which were complained of in the act of 1805, to remedy which this law was, in part, intended.